IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MILTON SYKES, | No. C 04-4229 MMC (PR) |
| Plaintiff, | **ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT; DISMISSING UNSERVED DEFENDANT; DENYING MOTION FOR APPOINTMENT OF COUNSEL** |
| v. | |
| TIMOTHY W. FRIEDERICHS, et al., | |
| Defendants. | **(Docket Nos. 31, 50)** |

On October 6, 2004, plaintiff, a California prisoner currently incarcerated at the California Medical Facility ("CMF") and proceeding pro se, filed the above-titled civil rights action under 42 U.S.C. § 1983, alleging that in 2004 officials at the California Training Facility in Soledad, California ("CTF"), where plaintiff was housed, did not provide adequate medical care for his complaints of blood in his urine. On November 15, 2005, after reviewing the complaint, the Court found plaintiff had stated cognizable claims against defendants Jim Hamlet ("Hamlet"), W.B. Childress ("Childress"), and Dr. Timothy W. Friederichs ("Dr. Friederichs"), all CTF employees, for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[1]

On March 3, 2006, plaintiff was granted leave to file an amended complaint, in which

---

[1] The remaining claims, including claims against defendant Jeanne S. Woodford, were dismissed for failure to state a cognizable claim for relief.

he repeated his allegations that Hamlet, Childress and Friederichs did not provide him with adequate medical treatment for the blood in his urine.  Now before the Court is the joint motion for summary judgment on plaintiff's amended complaint[2] filed by defendants Childress and Dr. Friederichs (hereinafter "defendants").[3]  Plaintiff has filed opposition, to which defendants have filed a reply.

## BACKGROUND[4]

On March 19, 2004 and again on March 26, 2004, plaintiff was interviewed and examined by Dr. Inderjig Grewal ("Dr. Grewal"),[5] a CTF physician, because plaintiff had blood in his urine (also known as "hematuria").[6]  (Sykes Decl. Ex. 16.)  Dr. Grewal prescribed Cipro, which cleared up the problem at that time.  (Id. at Exs. 16-18; Friederichs Decl. ¶ 5(a).)

On May 5, 2004, plaintiff submitted an administrative grievance on "CDC Form 602" in which he requested: (1) that he be seen by a "specialist" because he was again passing blood in his urine; (2) pain medication for his arthritis; and (3) a transfer to a different prison "that has the proper facilities so [he] can wash [his] feet."  (Childress Decl. Ex. A).  On that date, Childress, the Appeals Coordinator at CTF, assigned the grievance to the medical office for review, and on May 19, 2004, Dr. Friederichs interviewed and examined plaintiff.  (Childress Decl. ¶ 4; Friederichs Decl. ¶ 5(b).)  Following the examination, Dr. Friederichs

---

[2] For the sake of simplicity, the amended complaint will be referenced herein as "the complaint."

[3] To date, Hamlet has not been served.  The United States Marshal ("Marshal") attempted service on Hamlet at CTF, where plaintiff indicated Hamlet was located, but returned the summons unexecuted because Hamlet was not employed or otherwise located there.

[4] The following facts are undisputed and are derived from the parties' exhibits.

[5] Neither Dr. Grewal nor Drs. Luca and Catalano, mentioned below, are named as defendants to the instant action.

[6] In their motion, defendants assert plaintiff first complained about blood in his urine on March 26, 2004; plaintiff states, however, and his medical records reflect, that he first complained about the problem to Dr. Grewal on March 19, 2004.  (Sykes Decl. Ex. 16.)  Defendants concede in their reply that plaintiff is correct as to the date on which he first complained.

2

discontinued the Motrin plaintiff previously had been receiving, because it appeared to exacerbate the hematuria; he also ordered stronger medication for the arthritis pain, filled out paperwork requesting plaintiff's transfer to a prison with special showers, ordered special soap and a pan for plaintiff in which to soak his feet, ordered a "renal ultrasound" of his abdomen and pelvis, ordered spine and knee x-rays, and ordered that plaintiff be allowed to pause every 100 yards when he walked. (Id. at ¶ 5(b); Childress Decl. Ex. A; Sykes Decl. Exs. 28, 36.) The ultrasound was approved on May 24, 2004. (Friederichs Decl. ¶ 5(c).) The next day, Dr. Luca saw plaintiff and determined that an Intravenous Pyelogram ("IVP") could not be performed because plaintiff had no usable veins, and noted that Dr. Friederichs had ordered a renal ultrasound "instead." (Id. at ¶ 5(d); Sykes Decl. Ex. 32.) On May 28, 2004, Dr. Grewal requested that the ultrasound be expedited so that it would be performed within three to four weeks. (Friederichs Decl. ¶ 5(e).) On June 4, 2004, plaintiff did not appear for a follow-up appointment with Dr. Grewal. (Id. at ¶ 5(f).)

Plaintiff was next seen by Dr. Grewal on June 9, 2004, at which time there were no new complaints, and, on June 21, the ultrasound was performed at Natividad Medical Center, an outside hospital in Salinas, California. (Id. at ¶ 5(g); Sykes Decl. Ex. 26.) Dr. Catalano found the ultrasound showed both kidneys were normal, and "possible stones" in the urinary bladder, with "only small postvoiding bladder residual." (Friederichs Decl. ¶ 5(g).) On June 25, plaintiff did not appear for a medical appointment with Dr. Friederichs, but Dr. Friederichs saw him on July 9 and ordered a urology consultation due to the possible stones in plaintiff's bladder. (Id. at ¶ 5(h); Sykes Decl. Ex. 26.) On July 23, 2004, plaintiff was transferred to Pleasant Valley State Prison ("PVSP") pursuant to his request to be transferred to a different prison to accommodate his "disability."[7] (Friederichs Decl. ¶ 5(i).)

In addition to the above-described administrative grievance submitted by plaintiff on May 5, 2004, plaintiff, on May 17, 2004, filed a "Reasonable Modification or Accommodation Request Form" on "CDC Form 1824". (Childress Decl. ¶ 5; Sykes Decl.

---

[7] The term "disability" is an apparent reference to plaintiff's difficulty in walking.

3

Ex. 41.) In that request, plaintiff complained of his arthritis and inability to wash his feet in the showers at CTF, and requested a transfer to a different prison to accommodate those conditions. (Id.) The request was converted to a CDC Form 602 administrative grievance, and, pursuant to prison regulations, was denied as duplicative of the May 5 administrative grievance. (Id. at Ex. 43.) On June 7, 2004, plaintiff filed another CDC Form 602 administrative grievance, in which he complained about his medical care being delayed; the grievance was denied because plaintiff had failed to begin the grievance at the informal level, as required by prison regulations. (Childress Decl. ¶ 10.)[8]

In February 2005, while at PVSP, plaintiff was diagnosed with bladder cancer, for which he underwent surgery and later received chemotherapy and radiation treatment. (Sykes Decl. ¶ 9, Exs. 1-9.)

## DISCUSSION

A.  Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See id.

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also Anderson v. Liberty Lobby, 477 U.S. at 248 (holding fact is material if it might affect outcome of suit under governing law; further holding dispute about material fact is genuine

---

[8] The parties have not submitted a copy of this grievance.

4

"if the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings, and by his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" See Celotex, 477 U.S. at 324 (citing Fed. R. Civ. P. 56(e)).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

B.  Analysis

Plaintiff claims defendants were deliberately indifferent to his medical needs by failing to properly treat his complaints of having blood in his urine. Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994) (equating standard with that of criminal recklessness). The prison official must not only "be aware of facts from which the

5

inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." Id. Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. See McGuckin, 974 F.2d at 1060. A claim of mere negligence related to medical problems is not enough to make out a violation of the Eighth Amendment. Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

   1.  Defendant Friederichs

  The undisputed evidence demonstrates Dr. Friederichs's actions did not disregard plaintiff's medical needs, but rather that he provided plaintiff with a considerable amount of medical care. Dr. Friederichs first learned about plaintiff's complaints of blood in his urine when he interviewed and examined plaintiff on May 19, 2004, in connection with plaintiff's May 5, 2004 administrative grievance. Following the examination, Dr. Friederichs discontinued the Motrin plaintiff had been receiving because it appeared to be exacerbating the hematuria, and ordered stronger medication for plaintiff's arthritis pain. At that time, Dr. Friederichs also ordered a "renal ultrasound" of plaintiff's abdomen and pelvis. After the request for an ultrasound was expedited by Dr. Grewal, plaintiff was taken to an outside hospital on June 21, 2004 and the ultrasound was performed. Dr. Friederichs had a follow-up appointment with plaintiff shortly thereafter, on June 25, because the ultrasound results showed "possible stones" in the bladder, but plaintiff did not keep the appointment. Dr. Friederichs thereafter saw plaintiff on July 9, 2004, at which time he ordered a consultation with a urologist. In addition, Dr. Friederichs took significant steps to address plaintiff's other complaints, including prescribing stronger medication for the arthritis pain, filling out paperwork for a transfer to another prison that could accommodate his disabilities, ordering spine and knee x-rays, ordering a special soap and pan in which plaintiff could soak his feet, and requiring that plaintiff be allowed to take breaks when walking.

  Plaintiff does not suggest, let alone present any evidence, that Dr. Friederichs should have chosen a different course of treatment for plaintiff. In order to prevail on his claim, plaintiff must establish that the course of treatment the doctors chose was "medically

6

unacceptable under the circumstances" and that they chose this course in "conscious disregard of an excessive risk to plaintiff's health." See Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004). The only evidence presented as to whether the course of treatment plaintiff received was medically acceptable is the following opinion of Dr. Friederichs:

> Based upon my personal examination of Mr. Sykes, my review of the relevant medical records, and my professional training and experience, it is my opinion that the medical treatment Mr. Sykes received from the date of his initial complaint of blood in his urine . . . until the date he was transferred to Pleasant Valley State Prison . . . was reasonable and met, and even exceeded, the applicable standard of care. Typically, an abdominal and pelvic ultrasound along with a referral to a urologist are the appropriate response to a patient's complaint of blood in the urine.

(Friederichs Decl. ¶ 6.) Plaintiff presents no medical evidence that Dr. Friederichs's course of treatment was unacceptable, and plaintiff's own opinion to that effect does not create a genuine issue of material fact that Dr. Friederichs was deliberately indifferent to plaintiff's medical needs under the Eighth Amendment. See Franklin, 662 F.2d at 1344 ("A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim.").

Plaintiff asserts in his opposition that but for "delays" in the medical treatment he received from Dr. Friederichs, plaintiff's bladder cancer would have been "preventable" and he would not have needed to undergo chemotherapy and radiation treatment. Plaintiff provides no evidence in support of this assertion. There is no evidence that Dr. Friederichs caused any delay in plaintiff's treatment. On the same day he examined plaintiff and learned of the blood in plaintiff's urine, Dr. Friederichs ordered an ultrasound. Although it took approximately one month for the ultrasound to be performed, there is no evidence that waiting that period of time for an ultrasound was medically unacceptable under the circumstances, nor is there any evidence that Dr. Friederichs had the authority to order the ultrasound performed on an earlier date. Moreover, there is no evidence that plaintiff had a diagnosable cancer between May and July 2004, the period during which Dr. Friederichs treated him, such that an earlier ultrasound, or any other test, would have provided an earlier diagnosis. Further, there is no evidence that such an earlier diagnosis, even if capable of

being made, would have rendered the cancer "preventable" or avoided the need for surgery, or for either chemotherapy or radiation. Although the Court recognizes the seriousness of plaintiff's condition, and the unquestionably difficult course of treatment he has undergone, there is no evidence that Dr. Friederichs caused any delay in plaintiff's care, caused him to develop cancer, or caused him to undergo otherwise unnecessary procedures. Plaintiff's allegations to that effect, in the absence of any supporting evidence, do not preclude summary judgment. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) (holding conclusory allegations insufficient to defeat summary judgment).

   Plaintiff also asserts the delay in his receiving the ultrasound reflects a deliberate indifference to the pain he was experiencing at the time. As discussed above, however, there is no evidence Dr. Friederichs had any control over the precise timing of the ultrasound, and, even had he possessed such authority, there is no evidence the pain plaintiff was experiencing at that time was from the hematuria, as opposed to his arthritis, let alone that Dr. Friederichs, or any other doctor treating plaintiff, had any reason to know hematuria was the source of plaintiff's pain. In his May 5, 2004 administrative grievance, and at his May 19, 2004 examination by Dr. Friederichs, plaintiff complained of pain from his arthritis, not from the blood in his urine, and Dr. Friederichs did not ignore those complaints, but rather ordered stronger pain medication. Further, plaintiff's medical records between May and June 2004, the month in which the ultrasound was performed, only indicate plaintiff complained that there was blood in his urine, not that such condition was causing him pain. (Sykes Decl. Exs. 16-19, 26, 32.) Indeed, in an August 2004 medical request form at PVSP, plaintiff suggests it was not until that time that he had begun to experience pain from the hematuria. (Id. at Ex. 23 ("My medical condition of passing blood in urine for the last four months is *now* causing me to suffer pain.") (emphasis added).) As there is no evidence Dr. Friederichs or the other CTF doctors knew plaintiff was experiencing pain from the hematuria, Dr. Friederichs cannot reasonably be found deliberately indifferent in failing to secure an earlier ultrasound, even if he had the authority to do so.

   Finally, plaintiff argues that when Dr. Luca could not find a suitable vein for the IVP,

8

1 plaintiff should have been sent to an outside hospital for the IVP procedure. There is no
2 evidence, however, that personnel at an outside hospital could have performed the IVP
3 procedure given the condition of plaintiff's veins. In addition, Dr. Luca's notation in
4 plaintiff's medical records, that the ultrasound was ordered "instead," indicates ultrasound
5 was a medically-acceptable substitute for the IVP and that it was not necessary to perform
6 both procedures. (Sykes Decl. Ex. 2.)

7 Although plaintiff is of the opinion that Dr. Friederichs should have treated his
8 complaints of blood in his urine differently, he has submitted no evidence that the medical
9 treatment he received from Dr. Friederichs, and the other CTF doctors, was not medically
10 acceptable under the circumstances. Consequently, there is no triable issue of fact with
11 respect to whether Dr. Friederichs was deliberately indifferent to plaintiff's serious medical
12 needs under the Eighth Amendment.

13 Accordingly, Dr. Friederichs is entitled to summary judgment on plaintiff's claims.

14     2.     <u>Defendant Childress</u>

15 The only evidence of Childress's involvement in plaintiff's medical care is his
16 processing of plaintiff's administrative grievances.[9] For the reasons discussed above, there is
17 no triable issue of fact with respect to whether the medical care plaintiff received was less
18 than that required by the Eighth Amendment. Consequently, even if Childress had not
19 properly processed plaintiff's administrative grievances, any such failure did not result in a
20 violation of plaintiff's Eighth Amendment rights.[10]

21 In his opposition, plaintiff contends, for the first time, that Childress's conversion of

---

[9] As explained in the Court's November 15, 2005 Order of Service and Partial Dismissal, improper denial or processing of administrative grievances is not in and of itself actionable, as there is no constitutional right to a prison administrative appeal or grievance system. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

[10] This holding does not imply any finding to the effect that Childress mishandled plaintiff's administrative grievances. To the contrary, there is no indication Childress processed the grievances improperly. He assigned the May 5 grievance to medical staff that same day, after which it was reviewed and responded to by Dr. Friederichs; the May 17 grievance was duplicative of the pending May 5 grievance; and plaintiff failed to take the June 7 grievance through the required first step of the administrative appeal process.

9

his May 17, 2004 CDC Form 1824 request for accommodation to a CDC Form 602 administrative grievance, and the denial of such grievance as duplicative of his May 5 grievance, violated his rights under the Americans with Disabilities Act ("ADA").  Plaintiff did not make this claim in the complaint, however, nor did he set forth therein any allegation in support thereof.  As defendants have not had notice of the claim or an opportunity to respond to it, the Court will not consider it at this stage of the litigation.  See Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003) (upholding district court's finding plaintiff had waived § 1983 arguments raised for first time in summary judgment motion where nothing in amended complaint suggested those arguments, and plaintiff offered no excuse or justification for failure to raise them earlier).[11]  Moreover, even if it had been properly pled, plaintiff has not shown the claim has merit, in that plaintiff cites no provision of the ADA, and this Court is not aware of any, precluding Childress from characterizing an accommodation request as an administrative grievance.[12]  The Court further notes the evidence is undisputed that, in response to plaintiff's request for a transfer to a new prison in order to accommodate his disability, Dr. Friederichs filled out a form for such transfer and the transfer was effectuated in July 2004.  Consequently, plaintiff's belated assertion of a claim under the ADA does not affect Childress's entitlement to summary judgment.

   3.   Defendant Hamlet

As noted above, the Court ordered the Marshal to serve the complaint on Hamlet,

---

[11] The Court further notes plaintiff has previously filed an amended complaint. See Wagh v. Metris Direct, Inc., 363 F.3d 821, 830 (9th Cir. 2003) (holding discretion to deny leave to amend particularly broad where plaintiff already filed amended complaint).

[12] Plaintiff asserts the conversion of the accommodation request violated the "Remedial Plan" in a class action case, Armstrong v. Wilson, No. C 94-2307 CW (N.D. Cal. filed June 29, 1994).  To the extent plaintiff may be a member of a class seeking to enforce the provisions of a settlement or consent decree, he must do so through the class representative, class counsel, or special master in the class action, and not in his own, separate case.  Cf. McNeil v. Guthrie, 945 F.2d 1163, 1165 (10th Cir. 1991) (holding individual suits for injunctive and equitable relief cannot be brought where there is pending class action); Gillespie v. Crawford, 858 F.2d 1101, 1103 (5th Cir. 1988) (en banc) ("Individual members of the class and other prisoners may assert any equitable or declaratory claims they have, but they must do so by urging further actions through the class representative and attorney, including contempt proceedings, or by intervention in the class action.").

along with the other two defendants, at CTF, the facility at which plaintiff had alleged all said defendants were located. As further noted, the Marshal served the other two defendants at CTF, but returned the summons unexecuted as to Hamlet, for the reason that he could not be located there.

On September 28, 2006, the Court ordered plaintiff, pursuant to Rule 4(m) of the Federal Rules of Civil Procedure ("Rule 4(m)"), "to effectuate service on defendant James Hamlet or provide the Court with his accurate current location, within thirty (30) days of the date this order is filed." (See Order dated September 28, 2006, at 3.) On November 1, 2006, plaintiff was granted a thirty-day extension to comply with the September 28, 2006 Order. On November 6, 2006, plaintiff filed a "Notice of Motion" wherein plaintiff requested that defendants or their attorney, the California Attorney General, provide defendant Hamlet's current address to the Court. On November 17, 2006, the Court, construing plaintiff's request as a motion for discovery, directed defendants to submit Hamlet's current address or show cause why they should not be required to do so. In response, defendants' attorney filed a declaration in which he stated neither he nor defendants are in possession of Hamlet's current address.

Plaintiff's failure either to serve Hamlet within 120 days of the date this action was filed or to provide the Court with Hamlet's current location for service, or to show cause why he has not done so, provides sufficient grounds for dismissal of the claims against said defendant without prejudice pursuant to Rule 4(m).

It is apparent, however, that the claims against Hamlet are without merit and subject to summary adjudication. The allegations against Hamlet in the complaint are the same as those against Childress; specifically, plaintiff alleges that Hamlet and Childress did not provide plaintiff with adequate medical care in response to his administrative grievances. There is no suggestion in the complaint, the exhibits attached thereto, or in the briefs and exhibits filed in connection with the present motion, that the analysis differs with respect to Hamlet as opposed to Childress. As discussed above, the response to plaintiff's administrative grievances did not lead to plaintiff's receiving inadequate medical care under the Eighth

11

Amendment.

Accordingly, the Court will grant summary judgment in favor of Hamlet. See Columbia Steel Fabricators, Inc. v. Ahlstrom Recovery, 44 F.3d 800, 803 (9th Cir. 1995) (affirming district court's granting summary judgment in favor of nonappearing defendant, where plaintiff, in response to motion filed by defendant who had appeared, had "full and fair opportunity to brief and present evidence" on dispositive issue as to claim against nonappearing defendant).

C.  Appointment of Counsel

On November 6, 2006, plaintiff filed a second request for appointment of counsel. There is no constitutional right to counsel in a civil case such as this. See Lassiter v. Dep't of Social Services, 452 U.S. 18, 25 (1981). Rather, pursuant to 28 U.S.C. § 1915, a district court has the power to "request" that counsel represent a litigant who is proceeding in forma pauperis. 28 U.S.C. § 1915(e)(1). There are no exceptional circumstances warranting appointment of counsel in this case, and in light of the grant of summary judgment and dismissal ordered herein, appointment of counsel is unnecessary. Accordingly, plaintiff's request will be denied.

**CONCLUSION**

For the foregoing reasons, the motion for summary judgment filed by defendants Dr. Timothy W. Friederichs and W.B. Childress is hereby GRANTED and judgment in favor of said defendants, as well as defendant Jim Hamlet, shall be entered. The motion for appointment of counsel is hereby DENIED.

This order terminates Docket Nos. 31 and 50.

The Clerk shall close the file.

IT IS SO ORDERED.

DATED: March 20, 2007

_____
MAXINE M. CHESNEY
United States District Judge